IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CANDERA L. JACOBS,　　　　　　　　　　　　　　　　　　CV. 04-6294 CO

　　　　　Plaintiff,　　　　　　　　　　FINDINGS AND RECOMMENDATION

　　v.

JOANNE B. BARNHART,
Commissioner of Social Security,

　　　　　Defendant.

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Candera Jacobs ("Jacobs"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income and Disability Insurance Benefits. For the reasons set forth below, the decision of the Commissioner should be affirmed.

## PROCEDURAL BACKGROUND

Jacobs initially filed an application for benefits on February 15, 2000, alleging disability since June 1, 1997, due to depression, post-traumatic stress disorder, anxiety and personality

disorders, back injury, carpal tunnel syndrome, sleep disorder, drug and alcohol abuse, and a learning disorder. Her application was denied initially and upon reconsideration. On January 9, 2003, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated April 11, 2003, the ALJ found Jacobs was not entitled to benefits. The Appeals Council denied Jacobs's request for review, making the ALJ's decision the final decision of the Commissioner. Jacobs now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The

Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520©), 416.920©).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration (SSA) regulations, 20 CFR Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 CFR §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five. 20 CFR §§ 404.1520(e), 416.920(e).

Step Five. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*

## ALJ's DECISION

At step one, the ALJ found Jacobs had not engaged in substantial gainful activity since the alleged onset of her disability on June 1, 1997.

At step two, the ALJ found Jacobs had the medically determinable severe impairments of cognitive disorder, dysthymia, anxiety disorder with episodes of panic, possible post-traumatic stress disorder, borderline personality disorder, and history of substance abuse.

At step three, the ALJ found that Jacobs's impairments did not meet or medically equal the criteria of any listed impairments.

At step four, the ALJ found that Jacobs was not fully credible and retained the residual functional capacity to perform a modified range of work, with nonexertional limitations: (1) to simple routine tasks; (2) from ongoing interpersonal relations at more than the cursory level; (3) from service to the public; and (4) from coordination with coworkers. In addition, the ALJ found Jacobs "intolerant of rapid change or an excessive number of changed tasks. She is intolerant of excessive noise or distraction. She is unable to read beyond basic hazard signs. She is unable to perform paperwork or mathematics tasks." Tr. 24.

Because Jacobs is a younger individual between the ages of 18 and 44 and has a high school education and no transferable skills, the ALJ found at step five that Jacobs retained the ability to return to work as a crawdad fisherman. In addition, the ALJ found that Jacobs was capable of work at such jobs as a motel cleaner, electrode cleaner, and bench assembler. As a result, he found Jacobs not disabled within the meaning of the Act.

## DISCUSSION

Jacobs contends that the ALJ erred by: (1) using an incorrect standard to determine whether Jacobs met or equaled a medical listing; and (2) failing to show that there is work in the national economy that she can perform.

I. The ALJ's Step Three Finding Was Proper

Jacobs contends that her impairments met or equaled in severity the criteria of a listed impairment in 20 CFR Pt. 404, Subpt. P, App. 1. Specifically, Jacobs argues that she met or equaled in severity the listings for depression, post-traumatic stress disorder, anxiety, and

personality disorders. The Listing of Impairments describes conditions that are generally considered severe enough to prevent a person from doing any gainful activity. *Young v. Sullivan,* 911 F.2d 180, 184 (9th Cir. 1990). However, a claimant may have a listed impairment without being presumptively disabled if the claimant's impairment is not as severe as required under the findings for that impairment, or if the claimant has not had the impairment or a particular symptom for as long as the findings require. *Id.*

In order to meet the mental health listings, Jacobs must produce evidence of at least two of the following:

(1) Marked restriction of activities of daily living; or
(2) Marked difficulties in maintaining social functioning; or
(3) Marked difficulties in maintaining concentration, persistence, or pace; or
(4) Repeated episodes of decompensation, each of extended duration.

20 CFR Pt. 404, Subpart P, Appendix I, §§12.00C, 12.02B, 12.06B, 12.08B. The ALJ consulted Susan Dragovich, Ph.D., as a medical expert. Tr. 494-507. Jacobs argues that the ALJ erred in accepting Dr. Dragovich's conclusions because those conclusions were based on erroneous legal standards. Based on the medical record and Jacobs's testimony, Dr. Dragovich concluded that Jacobs had moderate, not marked, limitations in activities of daily living and social functioning. Jacobs contends that Dr. Dragovich used the wrong definition of "marked" when assessing her ability to function.

A. <u>Activities of Daily Living</u>

Dr. Dragovich noted that Jacobs was "in transition from one living situation to another," and was having "some transition types of problems which may not stand up over time. By the way she's describing or it's being described today, it would be a moderate level of

6 - FINDINGS AND RECOMMENDATION

impairment for activities of daily living. But I think, overall, that has reflected a more mild level. But if I'm going right now today with what she's talking about, that would be moderate." Tr. 498.

When asked to give an example of a person with marked limitations in activities of daily living, Dr. Dragovich testified:

> Someone who is requiring supportive care. Somebody who is either living in the environment or would be stopping by, so is not able to do self-help skills, bathing, feeding. Not able to do any of the tasks of shopping, meeting payments [sic] bills, able to use telephone, most of the things that you do during the day. I would say that the majority of those would be severely restricted or impaired.

Tr. 505-06.

The regulations provide:

> Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.00C.

As to 'activities of daily living', the regulations state that they:

> include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. In the context of your overall situation, we assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. We will determine the extent to which you are capable of initiating and participating in activities independent of supervision or direction.
>   We do not define "marked" by a specific number of different activities of daily living in which functioning is impaired, but by the nature and overall degree of interference with function. For example, if you do a wide range of activities of daily living, we may still find that you have a marked limitation in your daily activities if you have serious difficulty performing them without direct

supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions.

20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.00C1.

Dr. Dragovich found that Jacobs had "some problems" with daily living activities, but that she was able to function. Tr. 506. The ALJ determined that Jacobs's credibility is "severely limited," and this finding is not in dispute. Tr. 21. The ALJ's determination that Jacobs's activities of daily living are moderately limited is supported by substantial evidence.

B. Social Functioning

Dr. Dragovich found that Jacobs was moderately limited in social functioning, noting that she was able to maintain relationships with her mother, her son, and her counselors, and was able to participate in group therapy sessions. Tr. 505.

As to marked difficulties in social functioning, Dr. Dragovich testified:

Look for disruptions in terms of in [sic] their own personal relationships. In this regard, she's maintaining a relationship with her son, with her mom. She has – it's been of course a difficulty in the records, but pattern of serial relationships with different boyfriends or men in that regard. I would expect there to not be any ability to participate in group-based treatment activities. More difficulties in relating appropriately with treatment providers, if she's not in actual work settings. Then if the people that she is dealing with, disruptions or inability to work with those various kinds of people. I think it could be marked both in terms of – think it's marked on both extremes of severe aggressiveness, volatility, hurtfulness, requiring restraint or constraint. And also extreme passivity or withdrawal that cuts off most contact.

Tr. 505.

The regulations provide:

*Social functioning* refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate

> impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. You may exhibit strength in social functioning by such things as your ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. We also need to consider cooperative behaviors, consideration fo others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (*e.g.* supervisors), or cooperative behaviors involving co-workers.
>   We do not define "marked" by a specific number of different behaviors in which social functioning is impaired, but by the nature and overall degree of interference with function. For example, if you are highly antagonistic, uncooperative, or hostile but are tolerated by local storekeepers, we may nevertheless find that you have a marked limitation in social functioning because that behavior is not acceptable in other social contexts.

20 CFR Pt. 404, Subpt. P, App. 1 Listing 12.00C2.

Dr. Dragovich's opinion that Jacobs is moderately limited in social functioning is consistent with the regulations. The ALJ's reliance on Dr. Dragovich's opinion was not error, and his determination that Jacobs is moderately limited in social functioning is supported by substantial evidence.

C. <u>Prediction of Future Performance</u>

Jacobs argues that Dr. Dragovich's assessment was flawed because it was based on a prediction of Jacobs's future performance. Jacobs cites Dr. Dragovich's testimony that counseling would allow Jacobs "to be able to function more independently for herself and for her child." Tr. 507. Jacobs argues that Dr. Dragovich seemed to admit that Ms. Jacobs was not currently able to function independently. However, read as a whole, it is clear that Dr. Dragovich based her opinion on Jacobs's functioning at the time of the hearing, noting some potentially temporary difficulties due to a change in living arrangements. Tr. 494-507.

D. <u>Listing 12.05C</u>

9 - FINDINGS AND RECOMMENDATION

Listing 12.05C provides:

> Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 CFR Pt. 404, Subpart P, App. 1, § 12.05C.

Dr. Dragovich testified that Jacobs did not meet the requirements of Listing 12.05C. Gail Wahl, Ph.D., conducted the only IQ test in the record in June 2000. Dr. Wahl found that Jacobs had a full scale IQ score of 61, but distinguished those results from Jacobs's actual functioning level and reported that the test result was probably invalid. Tr. 238-41. Dr. Wahl doubted that Jacobs had given her best possible performance based on several factors, including that her vocabulary and manner of speaking "seemed considerably higher than she tested." Tr. 240. In addition to Dr. Wahl's report, Dr. Dragovich noted that Jacobs's ability to function was inconsistent with an IQ in the 60s, and that there was no evidence that anyone in the criminal justice or mental health systems had raised a question about her intellectual functioning. Tr. 500-02.

The ALJ also relied on the opinion of State agency psychologist, Robert Henry, Ph.D. Dr. Henry found that the IQ test results were compromised based on credibility issues and were inconsistent with Jacobs's employment and independent living histories. Tr. 90-91.

There are legitimate questions as to the validity of Jacobs's IQ score. The ALJ's determination that Jacobs did not meet the requirements of Listing 12.05C is supported by substantial evidence.

II. The ALJ's Step Four Finding was Proper

The ALJ assessed Jacobs's residual functional capacity ("RFC") as the ability to perform simple routine tasks in a quiet environment requiring no close work with others, no rapid work changes or excessive number of changes, no contact with the general public, and no requirement to read beyond basic hazard signs, prepare paperwork, or perform math tasks. Tr. 22. This RFC adopts the functional limitations assessed by Dr. Dragovich, which included consideration of moderate difficulties in concentration, persistence and pace. Tr. 502-03. Dr. Dragovich testified that Jacobs's concentration, persistence and pace were impacted by her anxiety, borderline personality disorder, and depression. Tr. 499. If her work is limited to simple tasks, Jacobs has only a moderate level of anxiety and depression. Dr. Dragovich testified that marked limitations would only result from non-simple tasks or if Jacobs returned to the use of drugs or alcohol. Tr. 499, 504.

Jacobs argues that the ALJ failed to have the VE consider her additional moderate deficiencies in concentration, persistence and pace when performing routine, simple tasks. However, the only evidence of such additional deficiencies is Jacobs's testimony, and, as discussed above, the ALJ properly found Jacobs not fully credible. The ALJ adequately accommodated Jacobs's limitations of concentration, persistence and pace by limiting her to simple, routine tasks with no rapid change in tasks and a limited number of changes in task, because she does not adapt easily to change.

11 - FINDINGS AND RECOMMENDATION

Jacobs argues that the ALJ failed to consider whether she would miss two or more days of work each month as a result of her depression and anxiety or to consider her symptoms of carpal tunnel syndrome. The only evidence of those limitations is the testimony of Jacobs, and the ALJ properly rejected this evidence.

## RECOMMENDATION

The ALJ's finding that Jacobs is not disabled is based on the correct legal standards and supported by substantial evidence. For these reasons, the Commissioner's decision should be affirmed and the case should be dismissed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.** *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections.* **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

Dated this __26___ day of July, 2005.

_____/s/_____
JOHN P. COONEY
United States Magistrate Judge